■ Lewis Lubitz et al., Appellants, v Vighneswana Capital Group, Inc., et al., Respondents, et al., Defendants. — In an action to foreclose a mortgage on real property, plaintiffs appeal from an order of the Supreme Court, Queens County, dated September 4, 1980, which, upon granting the motion of defendants Brocton Management Group *et al.,* and the application of defendant Vighneswana Capital Group, Inc., dismissed the complaint, vacated the appointment of a receiver and canceled a notice of pendency. Order reversed, on the law, without costs or disbursements, motion and application denied, and complaint, appointment of receiver and notice of pendency reinstated. Respondents' time to answer is extended until 20 days after service upon them of a copy of the order to be made hereon, together with notice of entry thereof. Defendant Vighneswana Capital Group, Inc., took title to the premises sought to be foreclosed on March 3, 1980, paying $200,789 of the purchase price of $2,888,540.45 in cash. As Special Term noted, Vigheswana took title subject to five mortgages of record as follows: "1. A mortgage made by Brocton House, Inc., to Jamaica Savings Bank on October 24, 1961 in the original amount of $2,101,400 as consolidated with a mortgage made by Mehlrel Inc., to Jamaica Savings Bank on August 9, 1972 to form a lien in the sum of $2,100,000. At the time of the closing, on March 3, 1980, there was due the approximate sum of $1,903,540.45 on this mortgage. 2. A mortgage made by Park Hill Improvement Corp. to John Machi and Evelyn Machi dated December 1, 1961, as extended by Extension Agreement, there was a principal balance of $17,500. 3. A mortgage made by Park Hill Improvement Corp., to Beatrice Donohue on December 7, 1961, as extended by an Extension Agreement dated November 18, 1975. At that time the principal balance was $20,875. 4. A mortgage dated August 9, 1972 made by Mehlrel, Inc., George Mehlman, Lewis Lubitz and S. Howard Goldman, to the Mastan Company, Incorporated. This mortgage was subsequently assigned to S. Howard Goldman and Lewis Lubitz on August 30, 1973 and is the mortgage being foreclosed upon herein. This mortgage was

subsequently modified and extended by an extension agreement entered into by and between S. HOWARD GOLDMAN and LEWIS LUBITZ as the mortgagees and QUEENS FRANKLIN COMPANY as mortgagor, as of September 1, 1973. [The extension agreement provided, *inter alia:* '4. That the whole of said principal sum and interest shall become due at the option of the party of the first part: after default in the payment of any installments of principal or of interest for fifteen days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the party of the first part for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided. An assessment which has been made payable in installments at the application of the party of the second part or lessee of the premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first instalment becomes due or payable or a lien. See Paragraph 21 herein. * * * 21. In the event of a default prior to the maturity of the indebtedness secured hereby, the party of the first part will give thirty (30) days written notice and demand, by certified or registered mail, to the party of the second part or the then owner of the mortgaged premises before commencing any foreclosure proceedings hereunder. If such default be in payment, then payment within said thirty (30) day period shall cure any such default. If the default be one of commission or omission of any act to be done or refrained by the party of the second part, then the commencement of the curing of the same within said thirty (30) day period shall cure said default, provided such provisions are diligently prosecuted to completion thereafter.'] 5. A mortgage made by BROCTON MANAGEMENT COMPANY to QUEENS FRANKLIN COMPANY, on March 29, 1978. This was a Wrap Around Mortgage which provided that it was subject and subordinate to the mortgages made to JOHN MACHI and EVELYN MACHI, BEATRICE DONAHUE *[sic]* and THE MASTAN COMPANY, INC. (which latter mortgage was assigned to GOLDMAN and LUBITZ, the plaintiffs herein) and that the mortgagees agreed to make all regular installment payments of principal and interest and deposits, if any, for Real Estate Taxes, water and sewer charges payable pursuant to the said mortgages wrapped around thereby, so long as the payments were made to the mortgagee by the mortgagor which was BROCTON MANAGEMENT COMPANY." At closing, Vighneswana gave a purchase-money mortgage back to Brocton, its grantor. This mortgage was also a wrap around mortgage (Wrap No. 2), which wrapped around the prior wrap around mortgage (Wrap No. 1) and provided that Brocton would make all payments due under mortgages wrapped around by it, provided the mortgagor (Vighneswana) made all payments and deposits required the by Wrap No. 1 mortgage. Wrap No. 2 required Vighneswana to pay Brocton the sum of $5,223 per month beginning April 1, 1980 and monthly thereafter until March 1, 1981, upon which date a certain lump sum was to be paid and the payments were to be decreased. In other words, the sole obligation of Vighneswana, in addition to paying the mortgage held by Jamaica Savings Bank, the first mortgagee, was to pay the sum of $5,223 per month to Brocton Management Company, which would then pay the amounts due and owing to the holder of Wrap No. 1, which was then supposed to pay the underlying mortgages. Since the date of closing, Vighneswana has met all of its obligations with regard to the mortgage held by Jamaica Savings Bank and with regard to the wrap around mortgage (Wrap No. 2) held by Brocton Management Company. However, defendant Brocton has either not been paying

defendant Queens Franklin Co., the holder of the Wrap No. 1 mortgage, or Queens Franklin Co. has not been meeting its obligation to the underlying mortgagees. Thus, plaintiffs at bar, who hold intermediate mortgages, are seeking foreclosure of a property, the fee owner of which has met all of its mortgage obligations. Moreover, it appears that all required payments have been made to plaintiff Lubitz. Defendant Zangas, a principal of defendant Brocton Management Group, conceded that no payments had been made to plaintiff Goldman since March 1, 1977. On April 30, 1980 plaintiffs elected to accelerate the mortgage pursuant to paragraph 21 of the extension agreement, so notifying defendants Brocton and Vighneswana as follows: "We are the attorneys for S. Howard Goldman and Lewis Lubitz, who are the owners and holders of a mortgage covering the above premises. The assignment of said mortgage to our clients was recorded August 28, 1972, in Reel 709 page 965. Amortization and interest payments have been due and owing since June 1, 1977 in the amount of at least $53,952.50 and have not been paid. Our clients, the owners and holders of the aforesaid mortgage do hereby exercise their option and declare the whole of the principal sum of said mortgage, together with any interest thereon, as due and owing. Notice is herewith given, pursuant to paragraph 21 of the aforesaid mortgage and extension agreement, that the principal sum of said mortgage, now in the amount of $182,000. along with the aforesaid arrears of principal and interest payments totalling $54,952.50, are due and payable within 30 days from the date hereof. Unless payments of the total of the aforesaid sums are made, all proceedings permitted by law will be taken in connection therewith." Defendants Brocton Management Group *et al.*, moved, *inter alia*, to dismiss the complaint and defendant Vighneswana applied for the same relief. Special Term, in granting the motion and application, held that it would be inequitable to permit a foreclosure against a fee owner which has met all its obligations. The court also held that plaintiffs had not, by their April 30, 1980 letter, complied with the 30 days' notice provision of paragraph 21 of the extension agreement. Finally, the court held that Goldman's delay in enforcing his rights constituted a waiver which estopped plaintiffs from foreclosing. Special Term did, however, condition the dismissal on Brocton's immediately bringing up to date all arrears owed Goldman. We reverse because the complaint, the allegations of which we presume true for purposes of this motion and application to dismiss, and accompanying affidavits set forth triable issues. The complaint clearly sets forth a cause of action for the principal due. Special Term held that plaintiffs' letter of April 30, 1980 to defendants Brocton and Vighneswana failed to comply with paragraph 21 of the extension agreement, which bound plaintiffs to give 30 days' notice to cure all defects, apparently finding the April 30 letter to be a notice of acceleration, not of default. Plaintiffs urge, however, that paragraph 21 must be read in conjunction with paragraph 4, which gives them the right to accelerate the balance due after any default in payment of interest or principal for 15 days. They allege that the April 30 letter, so read, is a default notice pursuant to paragraph 21 with respect to the mortgage balance, which was accelerated pursuant to paragraph 4. Respondents assert that plaintiff Goldman waived his right to payment by not demanding payment for more than two years, and that he must now be estopped from doing so. Plaintiffs reply that the payments directed to Lubitz, allegedly on instruction of defendant Mihlman, comprised only half the installments of interest and principal due, which fact would disqualify respondents from equitable relief. We follow the conclusion the Court of Appeals reached in an analogous case, that "Issues are here raised a determination of which affects the substantial rights of both parties. Those issues, when the facts are in dispute, should not be

settled on affidavits. If the mortgagor has available defenses they should be raised by answer where they may be decided after trial and full hearing of all the evidence by the trial court" *(Ferlazzo v Riley,* 278 NY 289, 292). Hopkins, J. P., Lazer, Gibbons and Gulotta, JJ., concur.